ESTATE OF JOHN A. MAYCANN, SR., DECEASED, BERENICE W. MAYCANN AND HAMILTON NATIONAL BANK OF CHATTANOOGA, EXECUTORS, AND BERENICE W. MAYCANN, SURVIVING WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54600. Filed October 22, 1957.

*Leonard Tanner, Esq.*, for the petitioners.
*Miller Bowen, Esq.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in income tax against petitioners for the taxable year ended December 31, 1950, in the amount of $1,444.34. Identical notices of deficiency, except for salutation and addresses, were mailed to each petitioner.

The issues are: (1) Whether an amount of $5,000 received by petitioner Berenice W. Maycann from Hibbler-Barnes Company in the taxable year ended December 31, 1950, is a nontaxable gift or whether such amount constitutes taxable income either as a dividend or, in the alternative, as additional compensation for the past services of John A. Maycann, Sr., deceased; and (2) whether the respondent erred in his concomitant adjustment of disallowing a deduction for medical expenses to the extent of 5 per cent of the said $5,000. The disposition of the second issue depends entirely upon our holding as to the first issue.

FINDINGS OF FACT.

Petitioners, Berenice W. Maycann and Hamilton National Bank of Chattanooga, are the duly qualified, appointed, and presently acting executors of the Estate of John A. Maycann, Sr., deceased.

John A. Maycann, Sr., hereinafter sometimes referred to as the decedent, died testate on October 23, 1950, while a resident of Chattanooga, Tennessee. Petitioner Berenice W. Maycann hereinafter sometimes referred to as Berenice, is the surviving wife of the decedent and was married to him until his death in 1950.

A joint income tax return of the decedent and Berenice was filed for the year 1950 with the then collector of internal revenue for the district of Tennessee at Nashville.

Hibbler-Barnes Company, hereinafter sometimes referred to as the corporation, was incorporated in the State of Tennessee in 1909. At the time of the incorporation, the amount of the authorized capital stock was $25,000. On May 9, 1947, the authorized capital stock was increased to $150,000.

The decedent had been an employee of the corporation for a period of approximately 42 years prior to his death. At the time of his death he was the president and treasurer.

The corporation became bankrupt in 1937 and was reorganized under section 77B of the Bankruptcy Act. In this reorganization it secured a loan of $65,000 from the Reconstruction Finance Corporation on condition that it would have a change in management. It was at this time that the decedent was made the chief executive officer. The decedent managed the corporation from then on and made an outstanding success of his management. Upon the death of the de-

cedent, John A. Maycann, Jr., son of the decedent and Berenice, became the president, treasurer, and general manager.

The corporation paid the decedent a bonus of $5,000 for the year 1945. For the years 1946 through 1949 and until his death in 1950, the corporation paid the decedent compensation as follows:

| Year | Monthly salary | Bonus | Total compensation |
|---|---|---|---|
| 1946 | $600 | $5,000 | $12,200 |
| 1947 | 1,000 | (¹) | 12,000 |
| 1948 | 1,000 | (¹) | 12,000 |
| 1949 | 1,000 | (¹) | 12,000 |
| 1950 | { 1,000 for 7 mos.<br>1,200 for 3 mos. | (¹) | 10,600 |

¹ None.

At a special meeting of the board of directors of the corporation held on November 10, 1950, the following resolution, entitled "Resolution Directing Payments to the Widow of John A. Maycann, Sr.," was unanimously adopted:

Whereas, John A. Maycann, Sr. served this company faithfully and well over a period of many years, and at the time of his death on October 23, 1950, was President, Treasurer and General Manager of the Company; and

Whereas, at the time of his death the salary of said John A. Maycann, Sr. was $1200.00 per month, and that in addition thereto, for the past several years, he had received a bonus of $5,000.00 per year; Now,

Therefore, Be It Resolved by the Board of Directors of the Hibbler-Barnes Company that in recognition of the services of John A. Maycann, Sr., the Company shall pay to his widow, Berenice W. Maycann, the sum of $7400.00 on or before December 31, 1950, and thereafter for a period of twenty-four months, the sum of $500.00 per month, beginning January 1, 1951, or until her death, whichever period is shorter.

Prior to the adoption of the above resolution, the corporation's attorney, who prepared the resolution, contacted the corporation's tax counsel with respect to the proposed payment to the decedent's widow and was advised by the tax attorneys that the proposed payment, if voted, would not be subject to income tax.

On November 20, 1950, the corporation paid $7,400 to Berenice pursuant to the aforesaid resolution. This amount was charged to the general expense account of the corporation and the supporting voucher described the payment as salary for 2 months, $2,400, and bonus, $5,000. The corporation deducted the amount of $7,400 as a general expense on its 1950 corporation income tax return. The corporation reported on this return a net income for the year 1950 of $23,861.08; an earned surplus and undivided profits as of December 31, 1950, of $159,890.77; and a capital stock outstanding as of December 31, 1950, of $120,000.

On or about November 10, 1950, the corporation purchased from Eva D. Buek 166 shares of its own stock to be held as treasury stock at a purchase price of $18,500. After this purchase, the stock of the corporation was owned as follows:

*Shares*

| | |
|---|---|
| Estate of John A. Maycann, Sr. | 554 |
| Berenice W. Maycann (widow) | 135 |
| John A. Maycann, Jr. (son of widow) | 105 |
| Mary Ellen Maycann (daughter of widow) | 90 |
| Berenice E. Maycann (daughter of widow) | 90 |
| Roy McDonald (director of corporation) | 30 |
| Elizabeth McDonald (wife of Roy) | 30 |
| Treasury stock | 166 |
| Total | 1,200 |

As of the date of decedent's death, there had been some discussion between the decedent and Roy McDonald concerning the purchase of the 60 shares of the corporation's stock owned by Roy and his wife but nothing had been worked out. Later, in February 1951, the corporation acquired the 60 shares in the manner described below.

At or about the time of decedent's death, McDonald Farm, a corporation, owed Hibbler-Barnes Company $14,000 for merchandise it had purchased from that company and was without cash to pay the account. McDonald Farm issued $14,000 par value of its stock to Hibbler-Barnes Company in satisfaction of the accounts receivable held by Hibbler-Barnes Company. Later, in February 1951, Roy McDonald transferred to Hibbler-Barnes Company the 60 shares of Hibbler-Barnes Company stock in exchange for the $14,000 par value of McDonald Farm stock. McDonald, in about 1945, had paid $3,000 for the 60 shares of Hibbler-Barnes Company stock.

The net profits of the corporation (Hibbler-Barnes Company) and the dividends paid by it for the years 1945 to 1950, inclusive, were as follows:

| Year | Net profits | Cash dividends | Stock dividends |
|---|---|---|---|
| 1945 | $25,565.73 | $1,499.10 | (¹) |
| 1946 | 91,893.97 | 1,341.30 | (¹) |
| 1947 | 70,155.49 | 631.20 | $60,000 |
| 1948 | 48,768.85 | 6,000.00 | (¹) |
| 1949 | 20,188.27 | 6,000.00 | (¹) |
| 1950 | 23,861.08 | 6,000.00 | (¹) |

¹ None.

On November 10, 1950, the board of directors of the corporation consisted of W. E. Wilkerson, chairman; John A. Maycann, Jr., secretary; H. C. Carbaugh, who was engaged in the poultry and egg

business; Pennell S. Dixon, an insurance agent; and Roy McDonald, publisher of a newspaper. Wilkerson died in 1952. Of the five members of the board who voted to pay the $7,400 to Berenice, John A. Maycann, Jr., was the only member related to the Maycann family.

The corporation was under no obligation to make any payment to Berenice. She performed no services for the corporation in consideration of which the corporation paid her the $7,400 on November 20, 1950. The payment to Berenice was not made as compensation covering services rendered by anyone.

None of the other stockholders of the corporation received any part of the payment of $7,400 to Berenice. The entire amount was used by Berenice for living expenses as her cash position was very low.

No dividend was contemplated in authorizing the payment of $7,400 to Berenice. The payment did not constitute a dividend.

Berenice did not report the $7,400 received by her from the corporation as income on her and her deceased husband's joint income tax return for the year 1950.

The respondent determined that $5,000 of the $7,400 received by Berenice was includible in her gross income for the year 1950 under sections 22 (a) and 126 (a) (1) (B) of the Internal Revenue Code of 1939.

The amount of $5,000, which was a part of the $7,400 paid to Berenice by the corporation in 1950, constituted a gift to her from the corporation.

The stipulation of facts filed by the parties is incorporated herein by reference.

### OPINION.

Respondent at no time has contended that $2,400 of the $7,400 is taxable to the decedent's widow. This is due to section 29.23 (a)–9 of his Regulations 111 and I. T. 3329, 1939–2 C. B. 153, which were in effect at the time the resolution was passed. The regulations provide that "[w]hen the amount of the salary of an officer or employee is paid for a limited period after his death to his widow or heirs, in recognition of the services rendered by the individual, such payments may be deducted" by the corporation, and I. T. 3329 provides in part:

The provision of the regulations quoted above is construed to mean that payments made by a corporation under such circumstances not in excess of the decedent's salary are properly deductible by the payor corporation as ordinary and necessary business expenses.

The amounts constitute gifts to B [widow of a deceased officer-stockholder] and are, therefore, not taxable income to her. * * * When an allowance is paid by

an organization to which the recipient has rendered no service, the amount is deemed to be a gift or gratuity and is not subject to Federal income tax in the hands of the recipient.

In view of the fact that the sum paid the widow exceeded by $5,000 the amount of the decedent's salary, the respondent contends that I. T. 3329 is not applicable and that, to the extent of the excess, the sum paid the widow is taxable to her either as a dividend, as that term is defined in section 115 (a) [1] of the 1939 Code, or as additional compensation for the past services of her deceased husband. Petitioners contend that the entire $7,400 was a gift to the widow from the corporation and as such should be excluded from gross income under section 22 (b) (3) [2] of the 1939 Code.

Whether the remaining $5,000 of the $7,400 is a dividend, additional compensation for the past services of the decedent, or a gift to the widow of the decedent is primarily a question of fact. *Alice M. Macfarlane*, 19 T. C. 9. In resolving that question we must look to the intent of the payor, which is the controlling factor. *Louise K. Aprill*, 13 T. C. 707; *Bogardus v. Commissioner*, 302 U. S. 34; *Brayton v. Welch*, 39 F. Supp. 537.

Respondent's argument that the board of directors was of the opinion that decedent had been receiving a $5,000 bonus in addition to his stated salary at the time they acted on the payment to the widow may well be true, but all of the four directors who were living at the time this case was tried testified unqualifiedly that they intended by their resolution of November 10, 1950, to make a gift to the widow. One of the directors, Roy McDonald, who was also a stockholder, also testified that if the payments voted to Berenice had been intended as a dividend, he would have insisted on his and his wife's share. The corporation earlier in the year, namely, on February 22, 1950, had voted that a dividend of 5 per cent be paid to the stockholders of record on March 1, 1950, which was done. We hold that the $5,000 was not a dividend.

The $5,000 in question clearly was not additional compensation to the decedent for past services. Although the respondent in his explanation of adjustments in the statements attached to his notices of

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year * * *

[2] SEC. 22. GROSS INCOME.

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter :

\*      \*      \*      \*      \*      \*      \*

(3) GIFTS * * *.—The value of property acquired by gift * * *

deficiency has cited section 126 (a) (1) (B) [3] of the 1939 Code as authority for his determination, he has not once referred to that section in his brief. In view of the fact that the corporation had fully paid the decedent for all the services he had rendered and was under no obligation to pay him, his estate, or any other person anything additional, we fail to see where section 126 (a) (1) (B) has any application to the facts of this case.

We have carefully considered the entire record, including all the arguments made and cases cited by the respondent, and are satisfied that the payment here in question of $5,000 to the decedent's widow was intended only as a gift to her by the corporation in recognition of the monumental services her deceased husband had rendered the corporation for which he was fully compensated during his lifetime. In *Bogardus* v. *Commissioner, supra,* the Supreme Court said, "A gift is none the less a gift because inspired by gratitude for the past faithful service of the recipient." We think the same is true where the payment is made to the widow of the one who rendered the faithful service.

We hold, therefore, that the payment was a gift; that it was not a dividend; and that it was not due as compensation for services rendered by anyone. As a gift, it was excludible from gross income under section 22 (b) (3) of the 1939 Code. *Louise K. Aprill, supra; Alice M. Macfarlane, supra; Estate of Arthur W. Hellstrom,* 24 T. C. 916; *Nixon* v. *United States,* (E. D. Tenn., Aug. 18, 1957)—F. Supp.—.

We think the case of *Lengsfield* v. *Commissioner,* 241 F. 2d 508, which was cited by respondent in a supplemental brief, is clearly distinguishable on its particular facts and is in no sense controlling.

In view of our holding on the principal issue, it follows, as a matter of computation, that the respondent also erred in disallowing medical expenses to the extent of 5 per cent of the $5,000 payment in question.

*Decision will be entered under Rule 50.*

---

[3] SEC. 126. INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

. (1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

\* \* \* \* \* \* \*

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent; \* \* \*