BANK OF THE SOUTHWEST NATION-
AL ASSOCIATION, HOUSTON, Inde-
pendent Executor of the Estate of Earle
W. Johnson, Deceased, and Virginia
McClain Johnson, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 10232.

United States District Court
S. D. Texas,
Houston Division.

July 2, 1958.

Baker, Botts, Andrews & Shepherd, and Baine P. Kerr, Houston, Tex., for plaintiff.

William B. Butler, U. S. Atty., and Arthur L. Moller, Houston, Tex., for defendant.

HANNAY, Chief Judge.

Earle W. Johnson, (hereinafter called "Decedent"), died suddenly on March 11, 1953 while on a business trip to Canada. He was at such time, and for many years had been, the husband of Mrs. Virginia McClain Johnson, (hereinafter called "Mrs. Johnson"). He was President and Chief Executive Officer of the General Geophysical Company, (hereinafter called "Company" or "the Company").

As of the date of his death, he had registered in his name 3,461 shares of the Company's stock out of 6,461 shares of stock in the hands of all twenty shareholders. All of the stock of Decedent was common property of himself and his wife, having been acquired after their marriage. Of the 3,461 shares of stock held by Decedent, 3,186 shares were "B" stock, which was voting stock, and 275 shares were "A" stock, which was nonvoting stock. There were 1,665 shares of "B" stock in the hands of three other shareholders at the time of Decedent's death.

Decedent's salary from the Company at the time of his death was $36,000 per annum. He was paid the gross amount of $1,500 twice each month. At the time of his death, he had been paid for all services rendered by him to the Company through July 31, 1953. There was due and owing to him his salary for the first eleven days of August, 1953. All of the employees of the Company were custom-

arily entitled to be paid to the next pay day should he die during a particular pay period. In addition, the Company had a plan in effect whereunder any employee who had purchased U. S. Savings Bonds under a payroll savings plan, and had not cashed same in at the end of an employment year, received a so-called "bond bonus." Decedent had received, during January, 1953, a bond bonus of $210 for the year 1952. There was due and owing to him the sum of $122.50 for his participation in the 1953 bond plan up to his death.

Decedent left a written will wherein The Second National Bank of Houston, now Bank of the Southwest National Association, Houston, (hereinafter called "Bank" or "the Bank"), was named as the sole Independent Executor of his estate and Trustee of a testamentary trust provided for in his will. The Bank qualified as Independent Executor in due course, and on September 1, 1953 was issued Letters Testamentary by the Probate Court of Harris County, Texas. At all times pertinent to this suit, the Bank was acting in its capacity as Independent Executor of the Estate of Earle W. Johnson, deceased. Mr. Homer E. Henderson, now deceased, was a Vice-President and Trust Officer of the Bank and in such capacity generally acted for the Bank in its role as Independent Executor.

On or about August 28, 1953, the Bank took complete possession and control of all of the assets which had constituted the common property of the Decedent and Mrs. Johnson. It retained such possession and control until in 1957 when the administration was concluded and a partition of the common property effected. Included in the assets which the Bank possessed and controlled were all of the 3,461 shares of the Company held in Decedent's name as of the date of his death. They were all issued in the name of "Earle W. Johnson" on the stock books of the Company. At all times pertinent to this suit, all of such stock was voted by the said Henderson in his capacity as the representative of the Independent Executor of Decedent's estate.

Shortly after Decedent's death, the Company delivered a check for $1,500 covering Decedent's salary for the period August 1–15, 1953, to the Bank. Company likewise delivered a check for $122.-50 for the bond bonus.

The Company had no plan, policy, custom or contractual agreement to make any payment or payments to the estate of any deceased employee or to anyone else for any deceased employee after an employee's death. The Company had no pension plan before or after Decedent's death. There was no employment contract of any description between Decedent and the Company whereunder payments of the Company would be paid to the estate or anyone else after his death. Except for the salary for August 1–15 pay period and the bond bonus, Company's account with the Decedent was current.

Company was not obligated in any way to pay any employee or the estate of any employee any further compensation or amount in addition to the salary to the end of the current pay period, for or on account of employee's services to the Company during his lifetime.

A few weeks after Johnson's death, Mr. A. B. Grubb, Secretary-Treasurer of the Company, learned of Mrs. Johnson's financial condition—that is that she was temporarily low on cash funds. Grubb then discussed her financial condition with Messrs. Chester Sappington and T. O. Hall, the other principal officers of the Company, and thereafter Grubbs issued a check, as Treasurer of the Company, for $5,000, payable to Mrs. Johnson. The check was charged on the books of the Company as a loan or as an account receivable from Mrs. Johnson. The $5,000 was charged as an open account or account receivable and was drawn on the regular accounts payable account other than the so-called "payroll account."

A special meeting of the Board of Directors of the Company was held on December 28th or December 29th, 1953, at which Mrs. Johnson, who had been in

the meantime elected a Director of the Company on October 6, 1953, was present. On such date, the Board of Directors was enlarged from three to five members, the other directors being Sappington, Hall, Grubbs and Henderson. After a discussion, the following resolution was passed:

"The officers of General Geophysical Company are hereby directed and authorized to issue the necessary check or checks, payable to Virginia M. Johnson, continuing payment of the amount of salary formerly paid to the late Earle W. Johnson, president of the company, for the period extending from August 15, 1953, to December 31, 1953."

Mrs. Johnson was present at such December 28th or December 29th meeting but did not vote upon the above resolution. Henderson voted all of the Johnson stock. There was no objection voiced to such resolution.

The amount of $13,500 was transferred to Mrs. Johnson by crediting her $5,000 loan account on the books of the Company and drawing and delivering to "Virginia M. Johnson," individually, a Company check in the amount of $8,500. The $8,500 was deposited by Grubbs to Mrs. Johnson's personal account in The National Bank of Commerce of Houston. At the time of such payment, no payment of any kind was made to any other shareholder of the Company or to any other employee.

During the last part of 1953, the Company and Henderson began negotiations for the retirement by the Company of all stock standing in Decedent's name as of his death.

In late February, 1954, the stock held by the Bank as Independent Executor of the Decedent was retired by the Company, along with the stock of Paul L. Davis and the mother of Decedent, Mrs. Howell A. Johnson. All funds and property received as consideration for the retirement of the stock held in Decedent's name by the Bank amounting to some $860,000 (the price being $245 per share)

was paid or delivered to the Bank, although Mrs. Johnson joined in all legal instruments. At no time was any of the Company's stock ever issued in the name of Mrs. Johnson, nor did she ever vote any of the stock held by the Bank at any time after Decedent's death. No reduction or adjustment was made in the price paid by the Company to the retiring stockholders in 1954, in recognition of the $13,500 payment made to Mrs. Johnson in 1953.

Mrs. Johnson early in the Company's history served as Secretary. She had not so served since 1948. After Decedent's death, she had never been employed by the Company and had never received any compensation for services rendered by her as a Director, or in any capacity. The Company paid no dividends on its stock for seven years prior to Decedent's death. No dividends have been declared since Decedent's death. At all times during 1953, Company's accumulated earnings and profits exceeded $13,-622.50.

The sole question to be determined is whether the $13,500 received in 1953 by Mrs. Johnson from the Company was within the scope of Section 22(b) (3) Internal Revenue Code of 1939, 26 U.S.C.A. § 22(b) (3), an amount received as a gift. If it was a gift, it is not subject to the Federal Income Tax. If it was not a gift, it is exempt from Federal Income Tax.

Whether it was a gift is a question of fact, depending on the intentions of the parties, particularly that of the donor. This intention is to be determined from a consideration of all the facts and circumstances surrounding the payment.

It was made without any legal or moral obligation, in recognition of, but not in payment of, former services of the Decedent.

The person who apparently had more to do with the payment to Mrs. Johnson than anyone else, to-wit, Grubbs, stated:

"Well, it was just a matter of a gift, or, I don't know that you would call it a gratuity, but it was that sort

of thing. There was no particular reason for it." (Tr. 26).

### Findings of Fact

I find that it was the intention of both the Company and Mrs. Johnson that such payment was a gift.

I find that it was not compensation paid for services to the Company performed by anyone.

I find that it was not an inducement of the sale afterward made of all of the Johnson stock.

I find that it was intended to be, and was in fact, a gift to Mrs. Johnson. The said payment to Mrs. Johnson was voluntarily made and without consideration.

I further find that such payment made to Mrs. Johnson was not intended to be, and was not, an inducement to have her agree to the sale of the Johnson stock consummated in February, 1954.

In the case of Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 66, 82 L.Ed. 32, the Supreme Court has in the minority opinion stated what has since been recognized as a formula to be applied in such cases in the following language:

"* * * What controls is not the presence or absence of consideration. What controls is the intention with which payment, however voluntary, has been made. Has it been made with the intention that services rendered in the past shall be requited more completely, though full acquittance has been given? If so, it bears * * * kindliness toward persons who happen to have served, but who are paid without thought to make requital for the service? If so, it is exempt.

"We think there was a question of fact whether payment to this petitioner was made with one intention or the other. A finding either in his favor or against him would have had a fair basis in the evidence. It was for the triers of the facts to seek among competing aims or motives the ones that dominated conduct. * * *"

In the case of Estate of Mayeann v. Commissioner, 29 T.C. 81, filed October 22, 1957, the Tax Court quoted with approval the above statement, and added:

"We think the same is true where the payment is made to the widow of the one who rendered the faithful service."

Since the Bogardus case, there have been some eighteen cases decided by either the Tax Court or a U. S. District Court in favor of a gift being made to a widow under somewhat similar circumstances to the one here being considered. Included among such cases is Amy A. Nixon, Plaintiff, v. United States of America, Defendant, U.S.Dist.Ct., East. Dist.Tenn., decided August 18, 1957, and Estate of Maycann v. Commissioner, 29 T.C. 81, No. 12, filed October 22, 1957.

### Conclusions of Law

I conclude as a matter of law that this Court has jurisdiction of the subject matter and parties to this suit.

I conclude as a matter of law that the payment here in question of $13,500 to Mrs. Johnson was intended only as a gift to her by the Company out of an expression of gratitude and without any obligation.

I further conclude it was not paid for services rendered to the Company by anyone, and that it was not because of any obligation, legal or moral.

I further conclude that it was not paid as a corporate distribution or as a dividend.

I therefore conclude that the plaintiffs are entitled to recover judgment against the defendant for the amount of $9,762 erroneously paid by plaintiffs, together with the interest thereon at the rate of six per cent (6%) per annum from the date of payment, and for their costs herein incurred.

This memorandum embodies the Court's Findings of Fact and Conclusions of Law.

Clerk will notify counsel.