Ida Maltzman v. Commissioner. President Arms Realty Co., Inc. v. Commissioner.
Maltzman v. Commissioner
Docket Nos. 93950, 93951.
United States Tax Court
T.C. Memo 1964-136; 1964 Tax Ct. Memo LEXIS 200; 23 T.C.M. (CCH) 829; T.C.M. (RIA) 64136; May 15, 1964
Murray H. Falk, for the petitioners. Sanford S. Newman, for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent has determined deficiencies in income tax and additions to tax for failure to pay estimated tax for the calendar years 1957 and 1958 in the following amounts: Addition to tax,
Sec. 6654,
I.R.C.
Petitioner
Year
Income tax
1954
Ida Maltzman
1957
$1,372.59
$ 6,75
1958
1,377.84
11.66 lPresident Arms Realty Co., Inc.
1957
1,740.00
1958
1,239.69
*202 The issues to be decided are (1) whether payments received by petitioner Ida Maltzman from President Arms Realty Co., Inc., during 1957 and 1958 are, except for $5,000 governed by section 101(b), includable in her gross income under section 61(a), Internal Revenue Code of 1954, or are gifts governed by section 102(a), Internal Revenue Code of 1954, and (2) whether the amounts paid by petitioner President Arms Realty Co., Inc., to Ida Maltzman during 1957 and 1958 are deductible by the corporation as business expenses under section 162(a), Internal Revenue Code of 1954, or as pension payments under section 404(a)(5). Findings of Fact The stipulated facts are hereby found accordingly. Petitioner Ida Maltzman (hereinafter sometimes referred to as petitioner) resided during 1957 and 1958, the taxable years in controversy, at 822 West Roxbury Parkway, Chestnut Hill 67, Massachusetts. She filed her income tax returns for 1957 and 1958 with the district director of internal revenue, Boston, Massachusetts. Petitioner President Arms Realty Co., Inc. (hereinafter sometimes referred to as Corporation) is a corporation *203 organized under Massachusetts law on December 26, 1951. Corporation is in the business of realty rental. It filed corporate income tax returns on an accrual basis for the calendar years 1957 and 1958 with the district director of internal revenue, Boston, Massachusetts. Petitioner is the widow of Harry Maltzman (hereinafter sometimes referred to as decedent), who had been president and treasurer of Corporation from the date of its organization until his death on February 11, 1956, at the age of 64. At the date of decedent's death, petitioner was 66 years old; they had been married more than. 44 years. The duties of decedent, as president and treasurer of Corporation, consisted of managing the finances and supervising the operation and maintenance of its rental property, a brick apartment building containing 40 to 50 apartments, located at 10 President's Lane, Quincy, Massachusetts. The only other employees of Corporation besides decedent were a full-time superintendent and decedent's son, Edward Maltzman (hereinafter referred to as Edward), who was clerk for Corporation. The superintendent's duties included collecting rent from tenants, displaying vacant apartments to prospective *204 tenants, and taking care of routine maintenance. The superintendent was unable to read or write and so could not give cash receipts or make out rental bills. Decedent made out rental bills. Corporation did not employ any outside management. Decedent went to the building once or twice a month to collect rent and to authorize major repairs. The apartment building was constructed in 1940 and required few major repairs. The turnover of tenants was negligible; less than five tenants a year moved from the apartments. The gross annual rentals received by Corporation during the years prior to decedent's death were as follows: Year
Gross rents
1952
$38,341.76
1953
39,461.56
1954
39,791.32
1955
40,312.62 In addition to the rents, Corporation received investment income in 1955 of $2,900.29. Before he died in 1956, decedent was in the hospital a good share of the time. He drew no salary in 1956. For the four calendar years prior to 1956 decedent received the following salaries: Ellen Realty
Year
Corporation
Corp.
1952
$7,800
$7,200
1953
7,800
7,200
1954
7,800
5,000
1955
7,800
5,000 Ellen Realty Corp. was owned by the Maltzman family *205 and was in the realty business. During 1955 Corporation loaned decedent $26,800.26. The amount was reduced in part in that year by a credit of $8,550, representing decedent's salary of $7,800 and automobile expenses of $750. The balance of the loan receivable at the close of 1955 was $17,693.76. This amount was increased in 1956 by $4,500. The loan was not repaid to Corporation by decedent prior to his death and was not listed as a debt in his estate tax return. Subsequent to the death of decedent, Joseph Kanter (hereinafter referred to as Kanter), the petitioners' accountant, was asked by the Maltzman children what could be done for petitioner. Kanter suggested that petitioner be provided additional funds through corporate payments. One factor influencing his suggestion was the tax effect of such payments on both Corporation and petitioner. He thought that such payments would constitute a gift to petitioner and be deductible by Corporation. Corporation, a family-owned corporation, has never paid a dividend. As of the date of decedent's death, all shares of the capital stock of Corporation were owned by the Harry Maltzman Family Trust. The grantors and beneficiaries of the trust *206 are the three children of petitioner and decedent - Edward, Ada Maltzman Farber, and Minnie Maltzman Trachtman. The trust instrument provided that decedent was trustee, to be succeeded at his death by petitioner and the three children. Petitioner was never a stockholder of Corporation and was not a beneficiary of the Harry Maltzman Family Trust. On March 15, 1956, the board of directors of Corporation consisted of petitioner, Edward, Ada Maltzman Farber, and Minnie Maltzman Trachtman. At a duly called meeting on that date, the board unanimously passed the following resolution: VOTED: That in recognition of the tireless services rendered to this Corporation by the late Harry Maltzman in his capacity as President and Treasurer, the amount of Six Thousand Dollars ($6,000.00) per year, for a period of five (5) years from March 15, 1956, be paid to his widow, IDA MALTZMAN. Pursuant to the resolution, Corporation paid petitioner the following amounts: Year
Amount
1956
$4,670
1957
5,800
1958
5,200 Petitioner did not report these amounts as income on her returns for the years in which the payments were received. Throughout the period 1952 through 1958 petitioner *207 was a director of Corporation. After decedent's death, she became president and treasurer of Corporation. She had such duties as the co-signing of checks. Subsequent to decedent's death, Corporation deducted the following amounts as rent on its income tax returns: Year
Amount
1956
$1,128.00
1957
1,164.00
1958
1,252.80 These amounts were paid to petitioner for office space provided to Corporation in her home. Prior to the death of decedent, no such rental payments had been made by Corporation. The total gross estate left by decedent was $144,962.19, divided as follows: Real estate
$ 13,000.00
Stocks and bonds
48,626.98
Mortgages, notes and cash
64,713.20
Insurance (petitioner named
beneficiary on $5,500 face
amount)
17,000.00
Jointly owned property (with
rights of survivorship in peti-
tioner)
350.00
Miscellaneous property
1,272.01
$144,962.19 Petitioner was sole beneficiary, co-executrix and co-trustee of a testamentary trust which had a net value as of the date of decedent's death of $115,011.39. Decedent's will provides, inter alia, that his entire estate shall be held in trust for petitioner's benefit. The co-trustees, *208 petitioner, Edward, and Kanter, are given broad discretionary powers and are directed to apply or expend for petitioner's benefit whatever amounts of net income, principal, or both, "they shall deem necessary for her comfortable support and maintenance, including a reasonable number of the luxuries of life." Petitioner is given a full power of appointment, including the right to appoint to her own estate. The Maltzman children, at the time of the March 15, 1956 directors' meeting, were cognizant of the size of the estate and of what was to go to petitioner. They know that the trust corpus would produce $4,000 to $5,000 income a year. The authorizing resolution and the payments thereunder to petitioner were not made pursuant to any contract, plan, practice, or understanding formed or in effect prior to the death of decedent. Corporation has never had any trust or pension arrangements for any of its employees and has not made any payments similar to those made to petitioner. The payments went directly to petitioner and not to decedent's estate. Corporation was not under any legal obligation to make the payments to petitioner. Corporation deducted the amounts paid to petitioner on *209 Schedule K, "Other Deductions," of its income tax returns as "Pension" in 1957 and "Widows Pension" in 1958. On its 1956 income tax return Corporation included the amount paid to petitioner within "Salaries and wages (not deducted elsewhere)." Corporation deducted the amounts paid to petitioner on its books as "Pension-Widow" in 1956 and as "Pension" in 1957 and 1958. Corporation did not withhold income tax on the payments in question, nor did it withhold or pay F.I.C.A. contributions in respect thereof. Respondent determined that the amounts received by petitioner were income to the extent they exceeded $5,000, the amount excludable from income under section 101 (b), Internal Revenue Code of 1954, as follows: Sec. 101(b) Includable
Taxable
Amount re-
exclu-
in gross
Year
ceived
sion
income
1956
$4,670
$4,670
1957
5,800
330
$5,470
1958
5,200
5,200
Respondent also determined that the deductions by Corporation in 1957 and 1958 for the amounts paid to petitioner did not constitute allowable deductions. Petitioner received payments from Corporation during the taxable years 1957 and 1958, which payments were *210 not included in her gross income. The dominant motive of the directors of Corporation was to show appreciation for decedent's services. The payments in controversy received by petitioner were not gifts and were includable in her income. Opinion Whether the payments to petitioner constitute income, as respondent insists, or a gift, [1] as contended by petitioner, is a factual question. Lucile McCrea Evans, 39 T.C. 570 (1962), affd. - F. 2d - (C.A. 6, Apr. 10, 1964); United States v. Kasynski, 284 F. 2d 143 (C.A. 10, 1960). The transferor's intention controls, Commissioner v. Duberstein, 363 U.S. 278 (1960), rather than the absence of consideration. Bogardus v. Commissioner, 302 U.S. 34, 45 (1937) (BRANDEIS, Judge, dissenting). A gift within the sense of section 102 involves a "detached and disinterested generosity," Commissioner v. LoBue, 351 U.S. 243, 246 (1956), proceeding from the donor's "affection, respect, admiration, charity or like impulses." Robertson v. United States, 343 U.S. 711, 714 (1952); Commissioner v. Duberstein, supra.
*211 While petitioner had never been a stockholder and the payment may not be attributable to a disguised dividend, cf. Barbourville Brick Co., 37 T.C. 7 (1961); Lengsfield v. United States, 241 F. 2d 508 (C.A. 5, 1957), affirming a Memorandum Opinion of this Court; Schner-Block Co. v. Commissioner, - F. 2d - (C.A. 2, Apr. 2, 1964), affirming a Memorandum Opinion of this Court, the close family control of the corporation requires a strict scrutiny of the facts. Florence S. Luntz, 29 T.C. 647 (1958). Although, of course, the factual patterns vary, the instant case is most similar to Smith v. Commissioner, 305 F. 2d 778 (C.A. 3, 1962), affirming a Memorandum Opinion of this Court, certiorari denied 371 U.S. 904, and to Lucile McCrea Evans, supra, and Margaret H. D. Penick, 37 T.C. 999 (1962), on appeal (C.A. 3, May 24, 1962), following Roy I. Martin, 36 T.C. 556 (1961), affd. 305 F. 2d 290 (C.A. 3, 1962), certiorari denied 371 U.S. 904, where a closely-held family corporation was also involved. We said there at 559: * * * If a word be necessary to characterize *212 the tenor of the resolution, we would choose "appreciation." Indeed, the minutes of the meeting specify that the decedent's salary is to be continued after his death "in recognition of such [long and loyal] service" to the corporation. These are not words of charity and there is no showing that petitioner was left financially destitute by [decedent's] death. The corporate resolution in the instant case authorized the payments to petitioner "in recognition of the tireless services rendered to this Corporation by [decedent]." The corporation characterized the payments on its books and tax returns as "Pensions" and deducted them as such. The corporate donor's purpose must be gathered not only from the statements of the directors [2] but from its own official records. *213 Neither the corporation's characterization of the payments as "Pensions," I.T. 3329, 1939-2 C.B. 153, nor the corporation's deduction of the payments, Commissioner v. Duberstein, supra, at 287-288, may be conclusive proof that the payments were not a gift. But they are some evidence that the corporation, whose intention we are to ascertain, did not regard the payments as wholly charitable. Lucile McCrea Evans, supra, at 580. And see Simpson v. United States, 261 F. 2d 497, 500 (C.A. 7, 1958), certiorari denied 359 U.S. 944. One of the impelling motives was stated to be petitioner's need. [3] Yet, as her children - the other corporate directors - knew when they acted upon the resolution, petitioner was the income beneficiary of a trust valued in excess of $100,000, the principal of which could be invaded for her benefit. Petitioner has introduced no evidence as to her need, nor of the actual corporate intent, and "to the extent that the record is incomplete, the Court is not warranted in indulging in conjectures in [petitioner's] favor to fill the gap." Estate of Mervin G. Pierpont, 35 T.C. 65, 68 (1960), *214 vacated and remanded sub nom. Poyner v. Commissioner, 301 F. 2d 287 (C.A. 4, 1962). The apparent absence of need by the petitioner strongly urges a finding of income, rather than gift, even though it was ostensibly a part of the reason for the adoption of the resolution. Margaret H. D. Penick, supra.
Petitioner attempts to avoid the force of the Smith, Evans, Penick, and Martin cases, supra, by pointing to her limited income in contrast to the substantially larger amounts that were shown to have been available to the widows there. But, of course, these matters must be viewed in perspective, and it seems obvious that even while her husband was alive [4] petitioner was accustomed to living on a modest scale. Her "needs" [5] would have to be gauged against that background. *215 Petitioner also relies on the fact that her husband had admittedly received adequate compensation during his life. To accept such a distinction would be the equivalent of concluding that a salary continuation, because it is excessive, would automatically constitute a gift. We know this to be fallacious from the teaching of Commissioner v. Duberstein, supra, at 285, that "the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730." We think that the payments to petitioner, coupled with the rents paid to her for the first time upon decedent's death, [6] were together the substantial equivalent of salary continuation. See Roy I. Martin, supra; Estate of Mervin G. Pierpont, supra. It follows that the payments constituted income to petitioner.
Whether the payments to the widow are deductible as "ordinary and necessary" business expenses, [7] or as pensions, [8] as the petitioner corporation contends, is also a question of fact. Commissioner v. Heininger, 320 U.S. 467 (1943). *216 Although the outlays may well have been ordinary, see Welch v. Helvering, 290 U.S. 111 (1933); Deputy v. DuPont, 308 U.S. 488 (1940), as Congress apparently recognized in recently passing [9] section 274(b), 1954 Code, they perhaps were not necessary. However, this is no longer a matter of first impression. The payments here involved encompassed the years 1957 and 1958, and were preceded by only a part of 1956, which we cannot say was an unreasonable period of time. [10] It is obvious that at least since 1939 payments made over "limited" [11] or "reasonable" [12] periods have been allowed as deductible business expenses by the respondent. See I. Putnam, Inc., 15 T.C. 86 (1950). We conclude that the payments made by petitioner corporation are deductble. *217 Decision will be entered for the respondent in Docket No. 93950. Decision will be entered for the petitioner in Docket No. 93951. Footnotes
1. SEC. 102. GIFTS AND INHERITANCES. (a) General Rule. - Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.↩
2. An examination of the testimony of the three directors requires the conclusion that it was not any real need of petitioner which was the dominant purpose in their minds for the action taken. One director testified on cross-examination: Q. You were aware of that, so you knew she didn't really need more money? I mean, she had $115,000 available for her use or for her benefits? A. Yes. Q. So that it wasn't a real question of need here; isn't that true? A. Yes. Another stated: Q. * * * [What] was the prime or the dominant motive in your mind in making these payments? A. Well, we wanted to make this gift to our mother in appreciation for all my father had done for this corporation. Q. And what other considerations did you have in mind? A. That she needed this financial help. * * *
Q. At any rate, being familiar with the terms of the will, you knew that, regardless of what the income from the estate was, the corpus was available for her benefit; isn't that true? A. Yes. The third director's summary of "the chief consideration, dominant motive in your mind at the time these payments were authorized" was: A. The chief consideration, I would say, was that we wanted to do it, to show some appreciation in the direction which has already been defined here.↩
3. The disinterested generosity of petitioner's three children in causing the corporation to remove all possibility of need may be somewhat illuminated by the statutory liability to which the children might otherwise be subject under Massachusetts law. Mass. Gen. Laws Ann., ch. 273, § 20↩ (1956).
4. In Evans, for example, the husband's salary had been $61,000 a year compared to the decedent's $12,800 here. In Smith, the husband's salary had been $80,000 a year; in Penick, $60,000 or more; and in Martin, the husband had earned $32,500 a year. ↩
5. Again, in Evans, the widow supported "the wife and child of her son," while here petitioner apparently had no dependents; and in Penick the taxpayer had large medical expenses.↩
6. The rent deductions by the corporation have not been questioned by respondent.↩
7. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; ↩
8. SEC. 404. DEDUCTION FOR * * * COMPENSATION UNDER A DEFERRED-PAYMENT PLAN. (a) General Rule. - If contributions are paid by an employer to or under a * * * pension * * * plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under section 162 * * * or section 212 * * * but if they satisfy the conditions of either of such sections, they shall be deductible under this section, subject, however, to the following limitations as to the amounts deductible in any year: * * *
(5) Other plans. - In the taxable year when paid, if the plan is not one included in paragraph (1), (2), or (3), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid. [See footnote 12, infra.] ↩
9. See H. Rept. No. 1447, 87th Cong., 2d Sess., p. A-31 (1962), 1962-3 C.B. 405, 529: (b) Gifts. - Generally, subsection (b)(1) of new section 274 disallows all expenses for gifts to individuals in excess of a cumulative total of $25 per year per reciplent. * * * The term "gift," for purposes of section 274, has the same meaning as it does under section 102 * * *. Any item which is excludable from gross income under a provision of chapter 1 of the code other than section 102 is not a "gift" within the meaning of subsection (b)(1). To illustrate the applicability of subsection (b)(1), a payment by an employer to a deceased employee's widow which is excludable from her income by reason of the gift exclusion provision, section 102↩, will not be deductible by the employer in excess of $25 * * *. 10. Since only the years 1957 and 1958 are involved, we are not passing on anything which might have occurred subsequently. ↩
11. See I.T. 3329, 1939-2 C.B. 153; Rev. Rul. 54-625, 1954-2 C.B. 85↩. 12. Sec. 1.404(a)-12, Income Tax Regs.: * * * Similarly, if amounts are paid as a death benefit to the beneficiaries of an employee (for example, by continuing his salary for a reasonable period), and if such amounts meet the requirements of section 162 or 212↩, such amounts are deductible under section 404(a)(5) in any case when they are not deductible under the other paragraphs of section 404(a). * * *