ESTATE OF MERVIN G. PIERPONT, DECEASED, ERNEST L. POYNER AND UNION TRUST COMPANY OF MARYLAND, EXECUTORS, AND LALLAH R. PIERPONT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78066. Filed October 19, 1960.

*Mannes F. Greenberg, Esq.*, for the petitioners.
*Joseph N. Ingolia, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The Commissioner determined a $1,376.22 deficiency in petitioners' 1956 income tax, resulting from his addition to their taxable income of "salary continuation payments" in the amount of $4,910.05, explained by him as follows:

(a) It is held that salary continuation payments of $9,910.05 paid to Mrs. Pierpont in 1956 by the Loewy Drug Co. in consideration of her deceased husband's services to that corporation constitutes taxable income to the extent of $4,910.05, computed as follows:

| | |
|---|---:|
| Salary continuation payments | $9,910.05 |
| Less amount excludible under Section 101(b) of the Internal Revenue Code of 1954 | 5,000.00 |
| Increase in taxable income | $4,910.05 |

The parties have filed a stipulation of all the facts, which, apart from references to the exhibits which are incorporated herein by reference, is as follows:

1. The petitioners Ernest L. Poyner and Union Trust Company of Maryland, a body corporate organized and existing under the laws of the State of Maryland, whose addresses are 26 South Street, Baltimore 2, Maryland, are the Executors of the Estate of Mervin G. Pierpont, Deceased, late of Baltimore City, Maryland (hereinafter called the "Decedent"). The Decedent died on January 31, 1956 and the aforesaid petitioners were duly appointed Executors of his Estate by an Order of the Orphans' Court of Baltimore City dated February 9, 1956. The petitioner, Lallah R. Pierpont, whose address is Broadview Apartments, 116 West University Parkway, Baltimore 10, Maryland is the surviving wife of the Decedent. The joint income tax return of the Decedent and the petitioner, Lallah R. Pierpont, for the period here involved was filed by the petitioners with the District Director of Internal Revenue for the District of Maryland.

2. The Loewy Drug Company of Baltimore City was engaged in the wholesale drug supply business from the date of its incorporation on January 25, 1907 until December 30, 1957 when it was liquidated.

3. Mervin G. Pierpont, deceased, was in the employ of the company for approximately 38 years and served as its president and as a director over the entire

period. He owned 66⅔% of the outstanding common stock of the aforementioned company throughout his employment and at his death. Morton L. Lazarus owned the remaining 33⅓%.

4. On January 31, 1956 Mervin G. Pierpont died. At the time of his death the company was paying him a salary of $20,000.00 a year.

5. Immediately prior to the death of Mervin G. Pierpont, the Loewy Drug Company had paid to him all amounts owed to him for services rendered up until that time. At the time of the Decedent's death the company was not legally obligated to pay anyone any amount as compensation for services rendered by the Decedent to the company.

6. On March 22, 1956 the Board of Directors of the Loewy Drug Company met. A portion of the minutes of this meeting is as follows:

"Consideration also was given to the continuation of salary payments to the widow of Mervin G. Pierpont and was deferred pending completion of audit and consideration of audited statements. The following resolution was adopted by the Board:

'RESOLVED: That in recognition of the services rendered by the late Mervin G. Pierpont, this Corporation pay to his widow as a continuance of his salary the sum of Three Thousand, Two Hundred Forty-Five Dollars and Fourteen Cents ($3,245.14); such amount to be paid by transferring to her the 1954 Cadillac automobile now owned by this Corporation, plus $64.91 to cover transfer costs, and that further consideration be given this matter by this Board of Directors after the audited statement is available.' "

7. On April 27, 1956 the Board of Directors of the Loewy Drug Company again met. The minutes of that meeting are as follows:

"The following Resolution was unanimously adopted by the Board in connection with the continuation of Mr. Mervin G. Pierpont's salary to his widow, Lallah R. Pierpont:

'RESOLVED: That in addition to the sum of $3,310.05 paid pursuant to the resolution adopted at the meeting of this Board on March 22, 1956, this Corporation pay to the widow of the late Mervin G. Pierpont as a continuation of his salary the sum of $600.00 per month commencing with the month of February, 1956 and continuing until further action of this Board or until such monthly payments aggregate the sum of $20,000, whichever shall first occur, this Board reserving the right to terminate said monthly payments at any time.' "

8. Pursuant to the aforesaid resolutions of its Directors the Loewy Drug Company made payments in the year 1956 aggregating $9,910.05 to the Decedent's widow, the petitioner, Lallah R. Pierpont. She also received $7,800.00 in 1957 pursuant to the aforesaid resolution of April 27, 1956. Said payments made to the Petitioner, Lallah R. Pierpont, were not made pursuant to any contract, plan, policy, practice or understanding made or in effect prior to the Decedent's death.

9. The Loewy Drug Company sold its inventory, equipment and fixtures in 1957 and was liquidated. Liquidating distributions of $414,777.95 were made to its stockholders.

10. The Joint 1956 Income Tax Return of the Decedent and the petitioner, Lallah R. Pierpont, was filed with the District Director of Internal Revenue at Baltimore, Maryland and contained the following statement:

*"MERVIN G. PIERPONT (DECEASED) & LALLAH R. PIERPONT 1956*
*RETURN*

Mrs. Lallah R. Pierpont received during the year 1956 from the Loewy Drug Co., Inc. the sum of $9,910.05 as salary continuation payments in recognition of

her deceased husband's services to that corporation. The amount so received constituted a gratuity, and accordingly, is not includible in taxable income. If includible, the exclusion of $5,000.00 provided for in the 1954 Internal Revenue Code, Section 101(b), would be applicable thereto."

11. On October 3, 1958 the Commissioner mailed a statutory notice of deficiency to the petitioners wherein he determined that the $9,910.05 paid to Mrs. Lallah R. Pierpont in 1956 by the Loewy Drug Company constituted taxable income to the extent of $4,910.05, and that there was a deficiency in income tax of $1,376.22.

12. In its corporate 1956 income tax return the Loewy Drug Company under the caption "Payments to Widow of Deceased Officer", deducted as expenses of doing business the sum of $9,910.05. Similarly, in 1957 under an identical caption the corporation deducted the sum of $7,800.00.

We are faced at the outset with the question whether the amounts paid to the widow by her deceased husband's employer are excludible from gross income under section 102(a) of the 1954 Code as "gifts." [1] This subsection was derived from section 22(b)(3) of the 1939 Code, which in turn had its counterpart in the various revenue acts prior thereto beginning with the Revenue Act of 1913. We delayed rendering our opinion in this case by reason of the pendency of certain litigation in the Supreme Court involving the meaning of the term "gift" under these provisions of the revenue laws. That litigation has been concluded. *Commissioner* v. *Duberstein*, 363 U.S. 278. We have made our findings and reached our conclusions herein in the light of that opinion. To be sure, payments to a widow by a deceased husband's employer were not there involved. But there was litigated the vexatious question as to what the guiding criteria should be in determining whether a transfer without consideration constitutes a "gift" within the meaning of the pertinent provisions. The opinion of the Court of Appeals in the *Duberstein* case itself reflected much of the misunderstanding and confusion that were current with respect to this issue among the lower courts. And although the Supreme Court declined to lay down the new "test" urged by the Government, its opinion went a long way towards bringing the problem back into proper focus, thereby clarifying and developing the law in this troublesome area. Cf. *Commissioner* v. *Sunnen*, 333 U.S. 591, 600, 603, 606–607.

In the first place, the Court noted that a voluntary transfer (363 U.S. 278, 285) "without any consideration or compensation therefor, though a common-law gift, is not necessarily a 'gift' within the meaning of the Statute." The Court continued (pp. 285–286):

For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. *Old Colony Trust Co.* v. *Commissioner*, 279 U.S. 716, 730. And, importantly, if the payment proceeds primarily from "the constraining force of any moral or legal duty," or from

---

[1] SEC. 102. GIFTS AND INHERITANCES.

(a) GENERAL RULE.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance.

"the incentive of anticipated benefit" of an economic nature, *Bogardus* v. *Commissioner*, 302 U.S. 34, 41, it is not a gift. And, conversely, "[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." *Robertson* v. *United States*, 343 U.S. 711, 714. A gift in the statutory sense, on the other hand, proceeds from a "detached and disinterested generosity," *Commissioner* v. *LoBue*, 351 U.S. 243, 246; "out of affection, respect, admiration, charity or like impulses." *Robertson* v. *United States*, *supra*, at 714. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's "intention." *Bogardus* v. *Commissioner*, 302 U.S. 34, 43. "What controls is the intention with which payment, however voluntary, has been made." *Id.*, at 45 (dissenting opinion).

And in footnotes 8 and 11 in the *Duberstein* opinion, the Court seemed to indicate that the dissenting opinion in the *Bogardus* case was entitled to at least as much weight as the majority opinion therein in determining what is a "gift." Moreover, the Court clearly pointed out that, in seeking out the donor's intention, the latter's description of the transaction cannot be determinative. The Court stated (p. 286):

the *Bogardus* case itself makes it plain that the donor's characterization of his action is not determinative—that there must be an objective inquiry as to whether what is called a gift amounts to it in reality. 302 U.S., at 40. It scarcely needs adding that the parties' expectations or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter.

* * * We take it that the proper criterion, established by decision here, is one that inquires what the basic reason for his conduct was in fact—the dominant reason that explains his action in making the transfer. * * *

Turning to the facts of the instant case, we are faced with the problem of ascertaining the donor's intention in the light of the criteria discussed in the *Duberstein* opinion. And in seeking out that intention, it must be remembered that the burden of proof is upon the petitioners, with the result that, to the extent that the record is incomplete, the Court is not warranted in indulging in conjectures in petitioners' favor to fill the gap.

Bearing in mind the foregoing considerations, we find nothing in the record that would lead us to conclude that the alleged gifts "proceed[ed] from a 'detached and disinterested generosity' * * * 'out of affection, respect, admiration, charity or like impulses.'" *Commissioner* v. *Duberstein*, *supra*. To the contrary, the explicit statement by the board of directors that the payments which it authorized were "in recognition of the services rendered by the late Mervin G. Pierpont" and its characterization of those payments as "a continuation of his salary" suggest that the dominant intention of the donor was to pay additional compensation in respect of the decedent's services. To be sure, the payments were made to the widow rather than to the decedent's estate, but there is no solid evidence that they were motivated in any part by the widow's needs or by a sense of generosity or the like. In view of this state of the record, we hereby find as an

ultimate fact that the payments in controversy were not intended as a "gift."

In view of the clarification of this general subject by the opinion in the *Duberstein* case, we have not found it profitable to discuss the numerous earlier decisions in the lower courts dealing with payments by an employer to the widow of a deceased employee. Moreover, each case must turn upon its own record, since we think it plain under the *Duberstein* opinion that there is no "rule of law" or litmus paper test that provides an automatic answer in such cases. Each such case is governed by its facts as appraised in the light of the principles expounded in the *Duberstein* opinion.[2] We hold on this record that the Commissioner did not err in determining that the payments were not excludible from gross income under section 102 and requiring the payments to be treated as taxable income, subject to the $5,000 exclusion provided by section 101(b) of the 1954 Code.[3]

Since we have reached the foregoing conclusion, we find it unnecessary to pass upon respondent's further contention that section 101(b) of the 1954 Code affirmatively requires the death benefits described therein in excess of $5,000 to be treated as taxable income. Such was the view expressed in dicta by the Court of Appeals for the Fourth Circuit in *Bounds* v. *United States*, 262 F. 2d 876, 878, footnote 2, as well as by the District Court in *Rodner* v. *United States*, 149 F. Supp. 233, 237 (S.D.N.Y.). On the other hand, the United States District Court for the Western District of Kentucky in *Reed* v. *United States*, 177 F. Supp. 205, held that the 1954 Code provision did not have that effect, and its decision has recently been affirmed without discussion, 277 F. 2d 456 (C.A. 6). The same result was also reached even more recently in *Cowan* v. *United States*, 191 F. Supp. 703 (N.D. Ga.). However, as already indicated, we need not reach this point, since we have found, applying the principles elaborated upon in the *Duberstein* opinion, that the payments herein did not constitute "gifts" within section 102.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[2] Similarly, no useful purpose would be served by discussing the various (and at times conflicting) administrative rulings and announcements in this field which were promulgated in prior years. I.T. 3329, 1939–2 C. B. 153 ; I.T. 4027, 1950–2 C. B. 9 ; Rev. Rul. 58–613, 1958–2 C. B. 914.

[3] SEC. 101. CERTAIN DEATH BENEFITS.

(b) EMPLOYEES' DEATH BENEFITS.—

(1) GENERAL RULE.—Gross income does not include amounts received (whether in a single sum or otherwise) by the beneficiaries or the estate of an employee, if such amounts are paid by or on behalf of an employer and are paid by reason of the death of the employee.

(2) SPECIAL RULES FOR PARAGRAPH (1).—

(A) $5,000 LIMITATION.—The aggregate amounts excludable under paragraph (1) with respect to the death of any employee shall not exceed $5,000.

Kern, J., dissenting: The facts stipulated by the parties, together with facts fairly to be inferred therefrom, are the facts of the case and are to be considered in the light of the pleadings and notice of deficiency.

In view of respondent's determination "that salary continuation payments * * * paid to Mrs. Pierpont * * * by the Loewy Drug Co. in consideration of her deceased husband's services to that corporation constitutes taxable income," it is my opinion that we may fairly infer from the facts stipulated that the payments were in truth made "in recognition of the services rendered by the late Mervin G. Pierpont" as recited in the resolution of the company's board of directors, and not in consideration of any services rendered to the corporation by Lallah. In view of the stipulated facts that "the company was not legally obligated to pay anyone any amount as compensation for service rendered by the Decedent to the company" and "[s]aid payments made to * * * Lallah * * * were not made pursuant to any contract, plan, policy, practice or understanding made or in effect prior to the Decedent's death," we may fairly infer that the company did not act in order to itself derive benefit from these payments. Cf. *Simpson* v. *United States*, 261 F. 2d 497; *Bausch's Estate* v. *Commissioner*, 186 F. 2d 313. Since the payments here involved were not made pursuant to any obligation or understanding nor pursuant to any plan or policy, it is my opinion that we may infer that they were made pursuant to "spontaneous benevolence."

A large number of cases decided by this tribunal and by the Courts of Appeals have held that payments such as those here involved are gifts and not taxable income to the payee widow. Among the more recent cases are *Florence S. Luntz*, 29 T.C. 647; *Estate of Arthur W. Hellstrom*, 24 T.C. 916; *Bounds* v. *United States*, 262 F. 2d 876.

In the *Luntz* case, *supra* at 650, we recapitulated the factors supporting the legal conclusion in the *Hellstrom* case that payments made by a corporation to the widow of a deceased officer were gifts, as follows: "* * * (1) the payments had been made to the wife of the deceased employee and not to his estate; (2) there was no obligation on the part of the corporation to pay any additional compensation to the deceased employee; (3) the corporation derived no benefit from the payment; (4) the wife of the deceased employee performed no services for the corporation; and (5) the services of her husband had been fully compensated." All of those factors are present in the instant case.

It seems clear to me that the extant authorities would require a decision that under the facts of this case the payments made by the employer corporation to the widow of a deceased officer and employee constituted gifts, unless the recent opinion of the Supreme Court in

*Commissioner* v. *Duberstein*, 363 U.S. 278, necessitates a different result. It is my opinion that the cases discussed by the Supreme Court in that opinion are so different factually from the instant case that we can derive little help from them in considering the question of whether payments made pursuant to no plan or policy by a corporation to the widow of a deceased officer or employee constitute gifts or taxable income. The Government advanced an argument before the Supreme Court in *Duberstein* which, if it had been accepted by the Supreme Court, might have necessitated a reconsideration by us of the cases cited above. However it was not accepted, and the opinion of the Supreme Court in *Commissioner* v. *Duberstein*, *supra*, would not seem to me to affect the validity of the prior opinions of this Court on the question of the taxability of payments by a corporation to widows of deceased officers and employees.

I, therefore, respectfully note my dissent.