Estate of Rose A. Russek, Deceased, David Nemerov, Harold Russek and Nathan D. Shapiro, Executors v. Commissioner. Rose S. Russek v. Commissioner.
Estate of Russek v. Commissioner
Docket Nos. 71196, 71231.
United States Tax Court
T.C. Memo 1961-28; 1961 Tax Ct. Memo LEXIS 324; 20 T.C.M. (CCH) 123; T.C.M. (RIA) 61028; January 31, 1961
Nathan D. Shapiro, Esq., 50 Court St., Brooklyn, N. Y., for the petitioners. Robert S. Bevan, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings respondent determined deficiencies in income tax as follows: Docket No.
Petitioner
Year
Deficiency
71196
Estate of Rose A. Russek, Deceased, David Nemerov,
Harold Russek, Nathan D. Shapiro, Executors
1952
$2,225.09
1953
2,151.93
1954
501.47
71231
Rose S. Russek
1952
2,570.31
1953
2,037.28
1954
1,032.03 The issue remaining is whether the amounts paid by a corporation to its deceased employees' widows from 1952 through 1954 constituted taxable income to the widows. Findings of Fact The stipulated facts are *325 found. Rose A. Russek, hereinafter called decedent, died on March 28, 1955. In Docket No. 71196, petitioner is her estate by its executors. Decedent and Rose S. Russek filed their respective returns for each of the years from 1951 through 1954 with the director of internal revenue, Upper Manhattan district, New York. Frank Russek and Isidore H. Russek, sometimes hereinafter called Frank and Isidore, respectively, were the founders of Russeks Fifth Avenue, Inc., hereinafter called the corporation. In 1936, the corporation had approximately 500-600 employees. It conducted a fur business in New York City on Fifth Avenue. This business had been conducted on Fifth Avenue since approximately 1912. In 1936, Frank and Isidore were stockholders of the corporation. On February 3, 1936, the corporation's board of directors held a meeting, the minutes of which stated in part: Upon a motion made by Frank Russek and seconded by Walter Weinstein it was resolved that * * * [the corporation] should pay to the widows, in the event of the death of any of the following: Max Weinstein, David Nemerov, [Isidore] H. Russek or Frank Russek; the sum of $100.00 weekly during the natural life *326 of the widow or widows. This obligation ceases upon the death of the widow or widows. On May 8, 1936, the corporation's board of directors held a meeting, the minutes of which stated in part: At the suggestion of the Chairman [Max Weinstein], a motion was made by Mr. Frank Russek and seconded by Mr. David Nemerov, that if Martin M. Schwartz and or Harry G. Eldridge are in the employ of * * * [the corporation] at the time of their demise, their widow or widows shall receive the sum of $50,00 per week from * * * [the corporation] during the lifetime of the widow or widows. In 1936, Martin Schwartz and Harry Eldridge were performing valuable services for the corporation. In the same year, and for a number of years previously, Max Weinstein, David Nemerov, Frank and Isidore were performing, and had performed in the past, valuable services for the corporation. On September 25, 1947, the corporation's board of directors held a meeting, the minutes of which stated in part: The Chairman [Max Weinstein] referred to a resolution of the Board of Directors enacted at a meeting held on February 3rd, 1936, pursuant to which it was provided that upon the death of MAX WEINSTEIN, *327 DAVID NEMEROV, [ISIDORE] H. RUSSEK and FRANK RUSSEK, or any of the foregoing, their widows were to receive a sum equal to One Hundred ($100.00) Dollars per week during their natural lives. Subsequently at a meeting held on May 8th, 1936, the foregoing resolution was amended to add that the widows of MARTIN SCHWARTZ and HARRY ELDRIDGE, upon their deaths would receive the sum of Fifty ($50.00) Dollars per week. The Chairman stated that he believed it advisable in the light of the services heretofore rendered and presently being rendered by WALTER H. WEINSTEIN and HAROLD RUSSEK who are performing valuable services for the corporation, that their widows be entitled to receive the sum of One Hundred ($100.00) Dollars per week upon proper terms and conditions. WHEREUPON, a discussion ensued and after such discussion, the following resolution was duly adopted: RESOLVED (Harold Russek and Walter H. Weinstein not voting), that the resolution of the Board of Directors of this corporation duly enacted February 3rd, 1936 and as amended by resolution dated May 8, 1936, be and the same hereby is further amended to read as follows: "RESOLVED that this corporation pay to the widows of any *328 of the following named officers One Hundred ($100.00) Dollars per week during the natural lives of the respective widows, provided the said officers shall be employed by this corporation at the time of their death: MAX WEINSTEIN, DAVID NEMEROV, [ISIDORE] H. RUSSEK, FRANK RUSSEK, WALTER H. WEINSTEIN, HAROLD RUSSEK and that this corporation pay to the widows of any of the following [named] officers Fifty ($50.00) Dollars per week during the natural lives of the respective widows, provided the said officers shall be employed by this corporation at the time of their death: MARTIN M. SCHWARTZ, HARRY ELDRIDGE." Martin Schwartz, comptroller of the corporation, prepared the resolution contained in these minutes. On September 25, 1947, Max Weinstein, David Nemerov, Walter H. Weinstein, Harold Russek, Martin M. Schwartz, Harry Eldridge and Frank Russek were employed as officers of the corporation. In 1947, the corporation had approximately 800 to 900 employees. In the same year there were approximately 500,000 shares of the corporation's common stock outstanding. Frank died on December 10, 1948. Decedent was his widow. At the time of Frank's death she owned 6,320 shares of *329 the corporation's common stock. She had received this stock from Frank as a gift. At the time of his death, Frank was employed by the corporation as vice president at an annual salary of $27,500. In addition, Frank owned 36,211 shares of the corporation's common stock and was one of its directors. From 1944 through 1947, the annual salaries paid by the corporation to Frank were as follows: 1944
$22,604.16
1945
26,173.05
1946
27,500.00
1947
27,500.00 The annual salary payable to Frank in 1948 was $27,500; he received $26,538.50, computed to the date of his death. Isidore died on May 31, 1947. Rose S. Russek is his widow. At the time of Isidore's death she owned 21,200 shares of the corporation's common stock. She had received the stock from Isidore as a gift. At the time of his death, Isidore was employed by the corporation as treasurer at an annual salary of $27,500. In addition, Isidore owned 22,044 shares of the corporation's common stock and was one of its directors. From 1942 through 1946, the annual salaries paid by the corporation to Isidore were as follows: 1942
$22,048.84
1943
24,941.90
1944
22,999.60
1945
26,173.05
1946
27,500.00
*330 The annual salary payable to Isidore in 1947 was $27,500; he received $13,076.94, computed to the date of his death. Commencing upon the death of Frank, the corporation paid his widow, decedent, by check the sum of $100 each week from December 10, 1948 to the date of her death on March 28, 1955. None of these payments was made to Frank's estate. Commencing upon the death of Isidore, the corporation paid to his widow, Rose S. Russek, by check the sum of $100 each week from May 31, 1947 to the sixth week of 1957. None of these payments was made to Isidore's estate. In the sixth week of 1957, all of the corporation's outstanding and issued stock held by the Russek interests was sold to new owners. As a part of this sale, Rose S. Russek executed a general release in favor of the corporation. The corporation treated the payments to decedent and Rose S. Russek as general expenses. Prior to their respective deaths, Frank and Isidore were officers of the corporation in which capacity they performed valuable services for it. Decedent and Rose S. Russek did not work for the corporation. Neither of them had a contract of employment with the corporation. Decedent and Rose S. Russek *331 reported on their respective returns for each of the years from 1951 through 1954 the sum of $200 of the $5,200 respectively received each year from the corporation, as follows: "Death Benefit" received from em-
ployer of deceased husband
$5,200
Exemption
5,000
Taxable income
$ 200
In preliminary reports of the income tax liabilities of decedent and Rose S. Russek, respectively, which were attached to "30-day letters," the following was stated: The amount of $5,000.00 excluded from income [in 1952, 1953 and 1954] as representing death benefits received by the taxpayer from the Employer of her deceased husband under a contract of Employment, is restored to income. Under Sec. 22(b)(1)(B) of the IRC (1939) * * * [an] exclusion of up to $5,000.00 is permitted. Since an amount of $5,000.00 was excluded from income in the year 1951 and allowed, there are no further exclusions for * * * [1952, 1953 and 1954.] In his notices of deficiency, respondent determined that the $5,000 of the amount of $5,200 respectively received by decedent and Rose S. Russek from the corporation in each of the years from 1952 through 1954, and not reported by them as such, constituted *332 taxable income. The respective amounts paid by the corporation from 1952 through 1954 to decedent and Rose S. Russek did not constitute gifts. Opinion Whether the amounts in issue paid to widows of deceased employees constitute nontaxable gifts or taxable income is essentially a question of fact and has been disposed of in our findings. Estate of Mervin G. Pierpont, 35 T.C. 65 (Oct. 19, 1960) on appeal (C.A. 4). That case, which was decided after the filing of the briefs herein, we consider indistinguishable in principle from the present facts. If anything, there is even less evidence here that this was a true gift by the employer than existed there. In any event, the mere characterization of a payment as a gift does not establish that a gift was intended or made. "To be sure, the payments were made to the widow rather than to the decedent's estate, but there is no solid evidence that they were motivated in any part by the widow's needs or by a sense of generosity or the like." Estate of Mervin G. Pierpont, supra. This record demonstrates that the employer never considered the widows' needs, but to the contrary there were obvious benefits to be derived *333 by the employer, [1] cf. Alice M. MacFarlane, 19 T.C. 9, and a moral, if not legal obligation to effectuate a long-standing plan of compensating future widows, confirmed by the employer's treatment of the payments as an expense. See Simpson v. United States, (C.A. 7) 261 F. 2d 497, certiorari denied 359 U.S. 944. Nor is this an instance of a limited payment for a fixed period. Cf. Louise K. Aprill, 13 T.C. 707. The only justifiable inference is that the amounts in controversy were not intended to represent gifts. It is not without significance that the widows were also stockholders and therefore entitled to share in the earnings of the corporation in their own right. We do not say that the payments were necessarily dividends, but they were not gifts. See Lengsfield v. Commissioner, (C.A. 5) 241 F.2d 508, *334 affirming a Memorandum Opinion of this Court. As we said in Estate of Mervin G. Pierpont, supra: [We] are faced with the problem of ascertaining the donor's intention in the light of the criteria discussed in the [Commissioner v.] Duberstein [363 U.S. 278] opinion. And in seeking out that intention, it must be remembered that the burden of proof is upon the petitioners, with the result that, to the extent that the record is incomplete, the Court is not warranted in indulging in conjectures in petitioners' favor to fill the gap. In short, it is our opinion that petitioners have not met the tests of Commissioner v. Duberstein, 363 U.S. 278, 285, where the Supreme Court said: A gift in the statutory sense * * * proceeds from a "detached and disinterested generosity," * * * "out of affection, respect, admiration, charity or like impulses." Having already found that the payments were not gifts, and even though they were pursuant to a "contract of an employer," it becomes unnecessary to decide whether amounts exceeding the $5,000 allowed by respondent, cf. section 22(b)(1)(B), I.R.C. 1939, with section 101(b), I.R.C. *335 1954, automatically represent taxable income. See Estate of Mervin G. Pierpont, supra.
Decisions will be entered for the respondent. Footnotes
1. As respondent points out, "these officers had to continue to work for * * * [the corporation] until their respective deaths in order for their widows to qualify for payments * * * [and] the payments promised to the widows were being offered to induce the officers to continue to perform valuable services for the corporation."↩