Roy I. Martin and Elizabeth E. Martin, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket, No. 83556. Filed June 21, 1961.

*C. Walter Randall, Jr., Esq.*, for the petitioners.
*Joseph S. Mangano, Esq.*, for the respondent.

Mulroney, *Judge:* The respondent determined deficiencies in petitioners' income tax for the taxable years 1955 and 1956 of $11,062.48 and $9,661.46, respectively. The sole question for decision is whether payments by a corporation to the widow of a corporate officer in the years in question constitute gifts or ordinary income taxable to the widow.[1]

FINDINGS OF FACT.

Some of the facts have been stipulated and they are found accordingly.

Petitioner Elizabeth E. Martin, hereinafter called petitioner, was the wife of Arthur Purdy, who died November 3, 1954. In 1955 she married Roy I. Martin of Ridgewood, New Jersey, and they filed their joint income tax returns for the years 1955 and 1956 with the district director of internal revenue at Philadelphia, Pennsylvania.

Arthur Purdy had been an employee of A. R. Purdy Co., Inc., and at the time of his death he was president of the corporation at an annual salary of $32,500. The corporation conducted a warehousing operation for numerous types of light iron and steel products and acted as a distributor for the Kaiser Aluminum Co. and Dow Chemical Co.

At the time of Arthur's death the stock of the corporation consisted of 5,000 shares of common and 5,000 shares of preferred stock, all of which were outstanding. The common shares were held, as follows:

---

[1] The petition also puts in issue the respondent's disallowance of an amount of medical expenses. The adjustment is an arithmetical one which depends solely on the decision in the main issue.

| Stockholder | Common shares |
|---|---|
| Trust under will of Ethel B. Purdy (Arthur's mother) | 588 |
| Arthur | 2,282½ |
| Elizabeth Purdy Shaw (Arthur's sister) | 1,825½ |
| Ralph W. Shaw, Jr. (Arthur's brother-in-law) | 304 |

The 5,000 preferred shares were held share for share with the common.

The trust under the will of Arthur's mother provided that upon the death of Arthur, said trust was to terminate and one-half of its corpus, the corporate shares, was to be transferred to Elizabeth Purdy Shaw and one-half was to be transferred to a trust for Arthur's children, the trustee of which was to be Ralph W. Shaw, Jr.

Under Arthur's will his shares in the corporation were left in two separate trusts, the trustees of which were petitioner and a corporate trustee. The petitioner was to receive the income for life from both and was given power to invade the principal of one at will, together with a testamentary power of appointment over that trust; the corpus of the second trust could be invaded by her in the event the income provisions from both trusts were not sufficient for her maintenance and support, or in the event of an emergency.

Thus, immediately following Arthur's death the Shaws controlled 2,717½ shares of common stock and the balance, 2,282½ shares, became part of Arthur's estate and subject to the trusts described above.

Ralph W. Shaw became president of the corporation shortly after Arthur's death. On November 8, 1954, he directed the treasurer of the corporation to pay petitioner $2,500 to take care of any immediate need for cash which she might have. On November 10, 1954, petitioner was elected a director of the corporation. On December 27, 1954, the stockholders of the corporation elected eight directors, including the Shaws, petitioner, and the vice president of a bank.

The next day the board of directors met with all directors present. The minutes of said meeting are, in part, as follows:

The Chairman again referred to the untimely death of the Company's President, Mr. Arthur R. Purdy, who had been associated with the Company since June 15, 1936, stating that his services to the Company had endeared him to all the officers and employees so his loss was deeply felt by all associated with the Company. In view of Mr. Purdy's long and loyal service to the Company, the officers thought that his salary should be continued to be paid to his widow, Mrs. Elizabeth Ellis Purdy, for a reasonable period of time after his death in recognition of such service.

After consideration and upon motion duly made and seconded, the following preambles and resolutions were unanimously adopted:

WHEREAS, Arthur R. Purdy, President of this Company, died on November 3, 1954 and

WHEREAS, he had been associated with the Company for more than 18 years and had rendered loyal and faithful service to the Company, and·

WHEREAS, the Directors believe that recognition of such service should be made and that his salary should be paid for a reasonable period of time to his widow, Mrs. Elizabeth Ellis Purdy, now therefore be it

RESOLVED: that subject to further action of this Board, this Corporation in recognition of the services rendered to it by Arthur R. Purdy, former President of this Corporation, pay to his widow, Mrs. Elizabeth Ellis Purdy, an amount equivalent to his salary of $32,500 per annum in monthly installments of $2,708.33 each for a period of 24 months commencing November 1954 and ending with the month of October 1956.

The corporation made monthly payments[2] to the petitioner, as follows:

| | Gross amount | Less Federal income tax withheld therefrom | Less other taxes withheld therefrom |
|---|---|---|---|
| **1954 ($5,000)** | | | |
| Nov. 8 | $2,500.00 | 0 | 0 |
| Dec. 29 | 2,500.00 | 0 | 0 |
| **1955 ($32,727.24)** | | | |
| Monthly for 12 months | 2,727.27 | $680 | ([1]) |
| **1956 ($27,272.76)** | | | |
| Monthly for 9 months | 2,727.27 | 0 | 0 |
| Oct. 31 | 2,727.33 | 0 | 0 |

[1] $84 FICA tax and $22.50 New Jersey disability and unemployment tax.

Payments to the petitioner were recorded in a general ledger on the corporate books in a folio bearing the title "Employees' Death Benefits." The payments by the corporation to the petitioner were deducted by the corporation on its Federal income tax returns as business expenses for its fiscal years ending September 30, 1955 and 1956. It made no withholding of tax as to the $5,000 paid petitioner in 1954 upon advice that this would not be taxable to petitioner under section 101(b), I.R.C. 1954. It ceased withholding in late 1955 upon the complaint of petitioner and her attorney and petitioner giving the corporation a "Hold Harmless" letter. The company had paid no dividends at least since 1953 and its yearend surplus for 1955 and 1956 was $801,845.52 and $828,450.82, respectively.

Petitioner did not include the amounts received from the corporation as income on her 1955 and 1956 income tax returns. On her return for 1955 she reported an overpayment of tax of $9,444, arising in part from the $8,244 Federal income and FICA taxes withheld in that year by the corporation. Refund of $9,444, plus interest, was made to her.

Respondent determined deficiencies for 1955 and 1956 by including the payments from the corporation to petitioner in those years in their entirety in taxable income.

[2] The payments shown in the table differ somewhat from the amounts in the corporate resolution to adjust amounts paid in 1955 and 1956 for the slightly smaller amounts paid in 1954.

Petitioner's entire argument is that the payments to her in 1955 and 1956 by the corporation were gifts and as such not taxable under section 102 of the Internal Revenue Code of 1954.

In *Estate of Mervin G. Pierpont*, 35 T.C. 65, we applied the principles indicated by the Supreme Court in *Commissioner* v. *Duberstein*, 363 U.S. 278, and held in a similar salary-continuation case that payments under like circumstances did not constitute gifts. Petitioner argues that the reasons which explain the corporate donor's action were a respect for the long and faithful service rendered to it by the decedent and a concern for petitioner's financial status following the death of her husband. She then argues that these reasons establish "as a matter of course" that the intention of the corporation was to give her cash in sufficient amount to afford her some measure of financial security and that such intent is within the gift "area" as set forth in *Duberstein* because it proceeded from "a detached and disinterested generosity—out of affection, respect, admiration, charity or like impulses." The touchstone is the intent of the corporate donor. This intent is determinable through examination of its actions and those of its officers and directors.

We have set forth the pertinent portion of the minutes of the December meeting of the board of directors in the Findings of Fact. We find in these minutes no language which suggests that the payments in question sprang from generosity or that a reason for the payments was affection, respect, admiration, charity, or a like impulse. If a word be necessary to characterize the tenor of the resolution, we would choose "appreciation." Indeed, the minutes of the meeting specify that the decedent's salary is to be continued after his death "in recognition of such [long and loyal] service" to the corporation. These are not words of charity and there is no showing that petitioner was left financially destitute by Arthur's death. The resolution does not show that it was motivated in any manner by petitioner's needs. We think it clear that at the very least the corporate minutes and resolution therein contained are not sufficient to show that the corporation intended to make petitioner a gift of the amounts in question. The testimony of several of the directors does not compel a different conclusion. John Eiseman, a banker, became a director of the corporation shortly after decedent's death. He was present at the December directors meeting and voted in favor of the resolution concerning the payments in question. He testified that "the services that [Arthur] had rendered to the company justified the payment." He also testified that at the time of the directors meeting he was not well acquainted with petitioner's financial circumstances, but that he was aware of the fact that the corporation had not been paying dividends,

that Arthur's estate consisted largely of stock in the corporation, and that Arthur's death would affect petitioner's income.

Ralph W. Shaw, Jr., as president of the corporation and a member of the board of directors, was present at the December meeting. He testified that his vote in favor of the resolution "was based upon the past services of" Arthur. He also testified that while he was not intimately acquainted with petitioner's financial condition at the time of Arthur's death, he caused the corporation to advance her $2,500 on November 8, 1954, to meet any immediate needs she might have for cash.

We believe that this testimony is no more conclusive of a showing that the corporation intended to make petitioner a gift of the amounts in question than are the corporate minutes. Each case must be decided on its peculiar facts. The facts in this case convince us that petitioner has not shown that the payments received by her from the corporation were a gift.

We do not reach respondent's argument that the payments constitute "Employees' Death Benefits" within the purview of section 101(b) of the Internal Revenue Code of 1954.

*Decision will be entered under Rule 50.*