Estate of Louis Rosen, Deceased, Hannah Rosen and Harry J. Winick, Executors, and Hannah Rosen v. Commissioner. Hannah Rosen v. Commissioner. Hannah Rosen v. Commissioner.
Estate of Rosen v. Commissioner
Docket Nos. 70894, 77588, 82999.
United States Tax Court
T.C. Memo 1962-58; 1962 Tax Ct. Memo LEXIS 250; 21 T.C.M. (CCH) 316; T.C.M. (RIA) 62058; March 19, 1962
Adrian Jerome Schiffer, Esq., for the petitioners. Robert S. Bevan, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: In these consolidated proceedings, respondent has determined deficiencies in income tax as follows: Year
Docket No.
Petitioner
Amount
1955
70894
Estate of Louis Rosen, Deceased, Hannah Rosen and
$3,794.23
Harry J. Winick, Executors, and Hannah Rosen
1956
77588
Hannah Rosen
3,218.87
1957
82999
Hannah Rosen
384.48 The sole remaining question is whether payments by a corporation to the widow of a corporate officer, director, *251 and shareholder were, in their entirety, gifts within the meaning of the applicable sections of the Internal Revenue Code of 1954, so as to be nontaxable to the widow. Findings of Fact The stipulated facts are hereby found accordingly. Hannah Rosen (hereinafter called petitioner) is the widow of Louis Rosen (hereinafter called decedent), who died on February 21, 1955. Petitioner duly and timely filed a joint income tax return on the cash basis under the name of Louis and Hannah Rosen, husband and wife, for the year ending December 31, 1955, with the district director of internal revenue at Brooklyn, New York. Hannah Rosen and Harry J. Winick, as executors and trustees under the last will and testament of decedent (hereinafter called the estate), joined in the execution of the return. Petitioner duly and timely filed her individual income tax return on the cash basis for the years ending December 31, 1956 and December 31, 1957, with the district director of internal revenue at Brooklyn, New York. Decedent was at all times up to the date of his death the president, a director, and the operating head of Federal Pump Corporation (hereinafter called Pump), a company in the business *252 of manufacturing and selling all types of pumps, and Federal Pump Repair Company, Inc. (hereinafter called Repair), a company in the business of repairing all types of pumps. Decedent's salary from Pump at the date of his death and for the year ending December 31, 1954 had been $31,800 per annum. The authorized compensation of decedent from Repair was as follows: For the fiscal year ending June 30, 1953 the sum of $50 per week plus $2,500 at the end of the fiscal year. For the fiscal year ending June 30, 1954 the sum of $50 per week plus $1,500 at the end of the fiscal year. All of the outstanding and issued common stock of Pump and Repair as of February 21, 1955 was held as follows: Pump
Repair
Decedent
233-4/7 shares
50 percent
Petitioner
36-3/7 shares
Sam Rosen (brother
of decedent)
50 percent
Prior to February 1, 1955, the board of directors of Pump consisted of decedent and petitioner. Prior to March 24, 1955, petitioner was secretary and treasurer of Pump. Prior to February 21, 1955, petitioner was not a stockholder, director, officer, or employee of Repair. Decedent's will provided for the residuary estate, consisting in part of decedent's *253 stock of Pump and Repair, to be divided into two equal trusts. The first gave petitioner a life estate in the income of the trust with a general power of appointment over the corpus of the trust. The second gave a life estate to petitioner in the income of the trust with a special power to appoint the principal of the trust to her children. Prior to February 1955 petitioner never appeared at the place of business of Pump for business purposes and she had never received a salary from Pump. In her capacity as an officer of Pump she signed several corporate documents. In February, shortly after decedent's death, Pump commenced paying petitioner $400 per week. A special meeting of the directors and stockholders of Pump was held on March 24, 1955, with the following present: Directors
Stockholders
Petitioner
Petitioner
Harry J. Winick
The estate At this meeting, Samuel Rosen was elected to the vacancy in the board of directors. Petitioner resigned her position as secretary and treasurer and was elected president of Pump and trustee of the employees' incentive trust. Harry Winick made the following statement: From April 1935, the date of the organization of this *254 Corporation, Louis Rosen, now deceased, was the President and Director of the Corporation, to the date of his death. That during all these years, he had unselfishly devoted his time, effort and attention to the building of the Federal Pump Corporation, to a position where today it is one of the most important pump corporations of its type in the east. That he had during these years, developed an organization of employees who have looked upon him with respect and admiration, and have followed in his footsteps with loyalty and devotion, to the interests of the Corporation. That while the Corporation was under no obligation to him or his estate, contractually or otherwise, for any services that he had rendered to the Corporation, except for any such unpaid salary as of the date of his death, a sense of appreciation ought to be expressed by the Corporation; that it could best be expressed by voting to continue to his widow the payment of $400 per week, beginning with the week ending February 24, 1955, and for a period of two years, to end February 20, 1957. After a discussion referring to petitioner's financial position and Pump's "gratitude" to petitioner and upon a motion made by Harry *255 Winick and seconded by Samuel Rosen, petitioner abstaining from voting, it was unanimously RESOLVED, that the Corporation express its appreciation to the widow of Louis Rosen for his untiring devotion and loyalty to the Corporation, by paying to her the sum of $400 per week, commencing with the week ending February 24, 1955, and to continue for a period of two years, to end February 20, 1957, and it was further RESOLVED, that if, and in the event, Hannah Rosen shall be actively employed by the Corporation and receive a salary for such services that she may render, the instant payments hereby authorized to be paid to Hannah Rosen, be reduced to the extent of any salary she may receive. And it was further RESOLVED, that any payments made to Hannah Rosen between February 24, 1955 and the date hereof, be and the same are hereby ratified as payments made in accordance with the Resolution hereinabove adopted. On the same day, at a special meeting of Repair, Winick made a substantially similar statement and a similar resolution was unanimously passed, except that it provided for a payment of $50 per week for 2 years. At this time, Winick had no personal knowledge of petitioner's financial *256 situation or personal affairs. Approximately one month after the death of her husband, petitioner began to take a more active interest in Pump. At first, she merely questioned the "key men" who were running the business. In June or July, petitioner was at the office for 2 or 3 days a week and, by September, petitioner was actively engaged in conducting the business of Pump. On September 28, 1955, at a special meeting of stockholders and directors of Pump, it was resolved that petitioner become an employee of Pump at a salary of $200 per week and that the payment under the resolution of March 24, 1955 be reduced a like amount. In 1955, 1956, and 1957, petitioner received the following payments from Pump and Repair, as recorded in the books and records of the two corporations: Pump
Repair
Payments
Salary
Payments
Year
Salary
Bonus
to Widow
and Bonus
to Widow
1955
$ 2,600
$15,400
$2,015 $950
1956
14,700
$3,100
6,100
5,100
1957
15,600
1,000
800
5,600
On Pump's corporate tax returns for the years 1955, 1956, and 1957, a deduction was taken under Schedule E, "Compensation of Officers," as follows: Amount of
Payments
Year
Officer
Official Title
Compensation
to Widow
1955
H. Rosen (from 2/22/55)
President
$ 5,780.00
$15,400
1956
H. Rosen
President
15,800.00
6,100
1957
H. Rosen
President
17,660.00
800
*257 A deduction for "Payments to Widow" was taken on Repair's corporate tax return for the fiscal year ending June 30, 1955. This deduction was listed in a schedule entitled "Other Deductions." Neither Pump nor Repair was under any obligation to decedent for services rendered, except for unpaid salary as of the date of his death. Prior to 1955 neither corporation had any plan, oral or written, whereby payments would be made to widows of deceased employees. All salary payments by Pump and Repair were subjected to the usual payroll tax deductions. The payments to petitioner in accordance with the resolutions of March 24, 1955, recorded as "Payments to Widow" on the corporate books of account, were not subjected to payroll tax deductions. The earned surplus of Pump for each of the years 1955, 1956, and 1957 exceeded $150,000. The earned surplus of Repair for the fiscal year ending June 30, 1955 exceeded $25,000. For the years 1948 through 1957, Pump declared and paid dividends to its stockholders in the following amounts: Year
Decedent
Declared
or Estate
Petitioner
Total
1948
$1,167.85
$ 182.15
$ 1,350.00
1949
2,335.71
364.29
2,700.00
1950
2,802.85
437.15
3,240.00
1951
2,802.85
437.15
3,240.00
1952
4,204.29
655.71
4,860.00
1953
4,204.29
655.71
4,860.00
1954
8,408.58
1,311.42
9,720.00
1955
9,342.85
1,457.15
10,800.00
1956
2,940.00
546.43
3,486.43
1957
8,840.00
1,894.28
10,734.28
*258 Petitioner did not include the amounts received from the corporation as "Payments to Widow" as income in her 1955, 1956, or 1957 income tax returns. Respondent determined deficiencies for these years by including these payments from the corporations in income as "Unreported death benefits" and "Employee Death Benefits" and included the following "Explanation of Adjustments" in his 1955 deficiency notice. Explanation of Adjustments
From: Federal Pump Corpora-
tion
$15,400
Federal Pump Repair
Corporation
950
$16,350
Received by reason of the death
of Louis Rosen excludable by
Section 101(b)(2) of the 1954
Internal Revenue Code
5,000
Amount of death benefits in-
cludable
$11,350 Petitioner contends that this is error and on petition alleges that "[since] the petitioner * * * received the money as a gift * * *, such receipts are not income * * *." The "Payments to Widow" from Pump and Repair in 1955, 1956, and 1957 were not motivated by petitioner's needs and were not intended by the respective boards of directors to be gifts and they were not gifts within the meaning of section 102 of the 1954 Internal Revenue Code *259 . Opinion As the case is presented, the sole question for our determination is whether the amounts received by petitioner designated as "Payments to Widow" from Repair and Pump were gifts within the meaning of section 102 and hence excludable from her taxable income. We are primarily concerned with the intention with which these payments were made. "We take it that the proper criterion * * * is one that inquires what the basic reason for * * * [the corporate] conduct was in fact - the dominant reason that explains * * * [the corporate] action in making the transfer." Commissioner v. Duberstein, 363 U.S. 278, 286 (1960). "The corporation's treatment of the disbursement as an expense on its books and tax return is evidence that the corporation did not regard it as a gift." Alex Silverman, 28 T.C. 1061, 1066 (1957), affd. 253 F. 2d 849 (C.A. 8, 1958). See also Willkie v. Commissioner, 127 F. 2d 953 (C.A. 6, 1942), affirming a Memorandum Opinion of this Court, certiorari denied 317 U.S. 659 (1942). Referring to the Duberstein case, we said in Estate of Mervin G. Pierpont, 35 T.C. 65, 67-68 (1960), on *260 appeal (C.A. 4, 1961): * * * [The] Court noted that a voluntary transfer 363 U.S. 278, 285) "without any consideration or compensation therefor, though a common-law gift, is not necessarily a 'gift' within the meaning of the Statute." The Court continued (pp. 285-286): "For the Court has shown that the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730. And, importantly, if the payment proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive of anticipated benefit' of an economic nature Bogardus v. Commissioner, 302 U.S. 34, 41, it is not a gift. And conversely, '[where] the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.' Robertson v. United States, 343 U.S. 711, 714. A gift in the statutory sense, on the other hand, proceeds from a 'detached and disinterested generosity,' Commissioner v. LoBue, 351 U.S. 243, 246; 'out of affection, respect, admiration, charity or like impulses.' Robertson v. United States, supra, at 714. *261 And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's 'intention.' Bogardus v. Commissioner, 302 U.S. 34, 43. 'What controls is the intention with which payment, however voluntary, has been made.' Id., at 45 (dissenting opinion)." As in Estate of Mervin G. Pierpont, supra, there is no "solid evidence" to support petitioner's contention that the payments were intended as a "gift." The resolution adopted by the board of directors, petitioner abstaining from voting, does not suggest that the payments * * * sprang from generosity or * * * affection, respect, admiration, charity, or a like impulse. If a word be necessary to characterize the tenor of the resolution, we would choose "appreciation." Indeed, the minutes of the meeting specify that the decedent's salary is to be continued after his death "in recognition of such [long and loyal] service" to the corporation. These are not words of charity * * * Roy I. Martin, 36 T.C. 556, 559 (1961), on appeal (C.A. 3, 1961). It is precisely this word "appreciation" which the board of directors chose to explain their *262 action. Petitioner argues that the discussion before the motion centered around petitioner's financial needs and that this moved the board to its generosity. However, Winick, the sponsor of the motion, testified that he was not aware of petitioner's financial condition or of her personal affairs at this time, and there is no showing that she was or was thought to be in financial need. Roy I. Martin, supra. There is indeed no possibility that one who was adequately acquainted with her circumstances could have thought that these payments would be of any benefit. Petitioner was sole life tenant of the estate which owned all the remaining stock of Pump and one-half that of Repair. There was no reason for the directors to prefer the form in which payments would enure to petitioner; whether as shareholder, employee, surviving widow, or otherwise could scarcely affect the amount of her total income. Consideration for an otherwise destitute widow's financial needs may consequently, under these circumstances, not reasonably be considered to have been the motivating factor here. Margaret H. D. Penick, 37 T.C. - (Feb. 27, 1962). In addition, petitioner contends that the payments *263 were to show the corporation's gratitude for the sacrifices made for the corporation over the years. Nevertheless, the resolution recognized "his [decedent's] untiring devotion and loyalty to the Corporation," Mary C. Westphal, 37 T.C. - (Nov. 28, 1961), on appeal (C.A. 8, 1962), and Winick again admitted that these payments would not have been forthcoming were it not for the services of decedent. The fact that both corporations treated the payments as deductions in calculating their net taxable income is further evidence that the payments were motivated by "* * * 'the incentive of anticipated benefit' of an economic nature," Commissioner v. Duberstein, supra, 363 U.S. at 285, such as an inducement to other executives. See Fifth Avenue Coach Lines, Inc., 31 T.C. 1080, 1093 (1959), affirmed and reversed on other issues 281 F. 2d 556 (C.A. 2, 1960), certiorari denied 366 U.S. 964 (1961). As a result, we have made the dispositive finding of fact that these payments were not intended as gifts within the meaning of section 102 of the 1954 Code. See Lengsfield v. Commissioner, 241 F. 2d 508 (C.A. 5, 1957), affirming a Memorandum *264 Opinion of this Court. We need not consider whether these payments were "death benefits" under section 101(b) of the 1954 Code since respondent has given petitioner the benefit of the $5,000 exclusion there conferred. And, though petitioner was a substantial shareholder of both corporations, [whether] the * * * [payments] represented additional compensation to [petitioner or decedent] for * * * services to the corporation * * * or constituted a distribution of earnings of the corporation involves making an unnecessary distinction and characterization. In either event, [petitioner] realized income. Alex Silverman, supra, 28 T.C. at 1068. Although respondent argues in the alternative that section 101(b) limits the provision respecting gifts, we find it unnecessary to deal with that contention. Decisions will be entered for the respondent.